SEARS, ROEBUCK & COMPANY v. FRANK R. PIXLER.

192 So. 617

Opinion Filed November 14, 1939

Rehearing Denied January 3, 1940

678

*Marks, Marks, Holt, Gray & Yates,* for Appellant;
*David J. Lewis,* for Appellee.

CHAPMAN, J.—The record in this case discloses that Sears-Roebuck & Company operates a retail store in Jacksonville, Florida, with a Mr. Ellis as manager, Mr. F. R. Markert, supervisor, and C. C. Crowell, as supervisor of maintenance, and the claimant, Frank R. Pixler, on November 9, 1937, was a building mechanic. It became necessary to replace some plaster on the second floor of the building occupied by Sears, Roebuck & Company, likewise some plaster about a fountain on the third floor, as well as other places in the building where the plaster was in a low state of repair and about to fall. Mr. Crowell and Pixler inspected the proposed work and it was agreed that the work could be done by Pixler for Sears, Roebuck & Company at a cost of approximately $15.00 or $20.00, and the work was to be done at night so as not to interfere with the retail business of the company during the daytime.

Pixler supplied and mixed the plaster to be used on the

building at his home and obtained the services of his son as a helper while doing the work. Sears, Roebuck & Company furnished Pixler a ladder, and instructions for carrying out the work were given by the above employees in control of the retail business. Sometime after midnight while Pixler was standing on the step-ladder and repairing the plaster, he fell therefrom and sustained serious injuries. The work was later completed by the son and the company paid Pixler the sum of $15.00 for labor and the sum of $2.65 for material by him supplied, making a total of $17.65 for the work. Other details appear in the testimony, but the foregoing are the salient or material facts.

On November 17, 1937, Frank R. Pixler filed with the Industrial Commission of Florida a petition or claim for compensation against Sears, Roebuck & Company under the Florida Workmen's Compensation Act, contending that the relation of employer and employee existed between Pixler and Sears, Roebuck & Company at the time of his fall when he sustained possible permanent injuries. Testimony was taken by the parties before a deputy commissioner, William B. Bond; and the chairman of the Industrial Commission on March 25, 1938, made and entered an order denying or disallowing the said claim. An appeal was taken from said order of dismissal to the Circuit Court of Duval County, Florida, and upon a hearing an order was made and entered by the Circuit Court of Duval County, Florida, revising the order made and entered by the Florida Industrial Commission and held that the injuries sustained by Pixler were such for which he was, as a matter of law, entitled to receive compensation. An appeal has been perfected to this Court from the order awarding Pixler compensation as entered by the Circuit Court of Duval County, Florida.

It is contended by counsel for the "company" that the evidence fixes the status of the claimant Pixler as an independent contractor and the relation of employer and employee did not exist at the time of the injury. Sub-sections 2 and 3 of Section 2 of Chapter 18413, Acts of 1937, Laws of Florida, define employer and employee, viz.:

"(2) The term 'employee' means every person engaged in an employment under any appointment or contract of hire or apprenticeship, express or implied, oral or written, including aliens, and also including minors whether lawfully or unlawfully employed, but excluding independent contractors and excluding persons whose employment is both casual and not in the course of the trade, business, profession or occupation of his employer."

"(3) The term 'employer' means the State and all political subdivisions thereof, all public and *quasi* public corporations therein, every person carrying on any employment, and the legal representative of a deceased person or the receiver or trustees of any person."

The sections, *supra,* make every person engaged in an employment under appointment or contract of hire or apprenticeship, oral or written, in the course of business or trade an employee. Employer means the State, political subdivisions thereof, public and *quasi* public corporations, and every person carrying on an employment.

In determining the relation of employer and employee, the terms of the statute establishing the relationship must be examined and if the relationship is fixed by the statute, then the rule as established by the Legislature must be applied to the testimony. The evidence shows that the "Company" retained the services of the claimant and while the work was in progress controlled the premises and through its employees gave the claimant additional instructions about the

work. The Company paid the actual costs of the materials used and a step-ladder was supplied by it to the claimant to be used in doing the work and took steps to cover or protect the merchandise when complainant was engaged in doing the work.

The Supreme Court of Alabama, in the case of Martin v. Republic Steel Company, 226 Ala. 209, 146 So. 276, in holding that Martin, who from time to time had worked for the defendant, Republic Steel Company, was an employee and not an independent contractor, said that there was a statutory definition in the Compensation Act of the terms "employer" and "employee," and there was, therefore, a more liberal construction given to the term "employee" than the common-law definition thereof. In that case, Martin had, on some occasions, cut cross-ties, laid rails and on others furnished poles, and at other times dug test holes or test pits in the furtherance of prospecting operations. It was shown that in each of the classes of work engaged in from time to time by the plaintiff, the particular work required of him would be outlined, whereupon plaintiff would hire his own labor to aid him; he hired and fired his labor as he chose; worked at what hours he chose; and was paid for each type of work upon a specific basis, and plaintiff would pay his own labor, furnish his own tools and appliances and was looked to by defendant for results. No officer or employee of the defendant exercised any supervision over the manner in which plaintiff performed his work. There was a judgment denying compensation on the theory that he was an independent contractor and on certiorari, the Supreme Court of Alabama reversed the case and said, in substance, that "While the trial judge finds that no officer supervised the petitioner it fails to find that the employer did not reserve the right to supervise the work.

The defendant offered in evidence a written contract joined in by the employer and the petitioner and that over the objection of the latter, the last clause contained a provision which will be found on page 278, which we will not quote."

In the case of Tuscaloosa Veneer Co. v. Martin, 233 Ala. 482, 172 So. 608, the Court held that Martin who was employed to cut timber in the woods and who furnished his own tools and hired his own assistant and was injured while he was cutting down timber without any direct supervision upon the part of the defendant and several miles away from their plant, was an employee and not an independent contractor.

In the case of Tuscaloosa Compress Co. v. Hagood, 229 Ala. 284, 156 So. 633, the Supreme Court of Alabama held that an expert mechanic, who was employed to repair a Compress Company's broken down compress, and who, at the time of his injury, was working on the company's premises in co-operation with its superintendent, was an employee and not an independent contractor. This case also deals with the proposition that the repairs were in the usual course of the master's business.

In the case of Johnson v. Asheville Hosiery Co., 199 N. C. 38, 153 S. E. 591, the Supreme Court of North Carolina held that the plaintiff, who had been called to the plant of the defendant to fix a paint spray gun and was then employed to paint the walls and ceiling of the defendant's plant, which was essential, was both an employee and working "in the course of the master's business," and the Court went on to say:

"Upon the facts appearing in the record, the first question of law must be answered in the negative. An 'independent contractor' has been defined as one who exercises an independent employment, contracts to do a piece of work

according to his own judgment and methods and without being subject to his employer, except as to the results of the work, and who has the right to employ and direct the action of the workman, independently of such employer and freed from any superior authority in him to say how the specified work shall be done or what the laborers shall do as it progresses."

It is next contended that if claimant was an employee within the meaning of the Act, *supra*, he would not be entitled to compensation benefits because his employment was casual and not in the course of trade, business or occupation of the employer. It is clear that in the construction of this statute that in order to exclude an employee from compensation benefits the employment must be *both* casual and not in the course of the trade, business, profession or occupation of the employer.

The Supreme Court of Appeals of Virginia, in Hoffer Bros. v. Smith, 148 Va. 220, 138 S. E. 474, 486, said:

"The test is the nature of the employment and not the nature of the employment contract. An employment cannot be said to be casual where it is in the usual course of the trade, business or occupation of the employer. But it is casual when not permanent nor periodically regular, but occasional, or by chance, and not in the usual course of the employer's trade or business."

It has also been generally held that the kind of work done and not the duration of service is the determining factor. So that, if the work pertains to the business of the employer and is within the general scope of its purpose, the employment is not of a casual nature, although the hiring be for only a short period of time. DeCarli v. Manchester Public Works Warehouse Co., 107 Conn. 359, 140 A. L. R. 1191. Thus it has been held that making repairs

on a building owned by a creamery is within the usual course of the business of the employment, and, therefore, compensable. Holmen Creamery Ass'n. v. Industrial Commission, 167 Wis. 470, 167 N. W. 808; Gross v. Industrial Commission, 167 Wis. 612, 167 N. W. 809. Furthermore, it has been held that even though employment is casual, the injury is compensable if occurring within the course of the employer's business. Pershing v. Citizens Traction Co., 294 Pa. 230, 144 Atl. 97; Hoshiko v. Industrial Commission, 83 Colo. 556, 266 Pac. 1114; Pfister v. Doon Electric Co., 199 Ia. 548, 202 N. W. 371.

In the case of Caca v. Woodruff, 70 Ind. App. 93, 123 N. E. 120, wherein the claimant was working as a carpenter by the hour, and paid weekly by Miller to make additions and repairs at the mill under the miller's supervision, that Court held that the repair and construction work was in the usual course of the miller's business and that the claimant was not an independent contractor, but was an employee and allowed compensation.

In the case of Meyer v. Industrial Commission, 347 Ill. 172, 179 N. E. 456, Meyer, who was a licensed airplane pilot, agreed with one Louer that he would operate the airplane of Louer, which was kept by Louer at Sky Harbor, near the City of Chicago, whenever he wanted to use same or when his brother-in-law desired to use same, and for this, Meyer was paid $10.00 per hour for each hour of actual flying time, and if it was a trip extending somewhat over an hour, he was paid at least $25.00 a day. From the date of the purchase of the plane on May 25, 1929, to the latter part of August, Louer had paid Meyer $830.36 for his services. Meyer was killed while operating the plane and a claim was filed, which the Industrial Commission disallowed, claiming that he was an independent contractor

and which holding was confirmed by the circuit court. The Supreme Court of Illinois reversed the case and held that Meyer was an employee and not an independent contractor.

In Channing's Case, 283 Mass. 196, 186 N. E. 243, the claimant was hired by so much an hour to put up steam pipes in a rug factory, and he was held to be an employee and not an independent contractor and the Court further held that the construction work was in the usual course of the master's business.

Where a corporation engaged in canning sea food and owning fishing boats, which it equipped with nets, ice, gasoline, and oil and turned the boats over to persons called "captains" and where the captains, under contract with the packer, went out on fishing expeditions, and with the assistance of others called "helpers," who were employed and paid by the captains, caught shrimp and prawn, which were brought back in the boat to the packer's plant, and were there delivered to the packer and where the packer retained one-third of the catch as payment for the use of the boats by the captains, and paid them money for the two-thirds of the catch at the market value and paid a part of the expenses, etc., it was held that the captain was an employee and not an independent contractor. Maryland Casualty Co. v. Grant, 39 Ga. App. 285, 146 S. E. 792.

Where an employer engaged in the retail lumber and building business decided to enlarge his business and go into the retail coal and fuel business, and it became necessary to erect a shed in which to store the coal, the construction of the shed was held within the usual course of its business. State v. District Court of Washington County, 141 Minn. 83, 169 N. W. 488.

Repairs about an industrial plant, whether frequent or such as may occur once in a very long time, are none the

less repairs, work on which, either general or special, is neither casual nor without the usual course of business. F. C. Gross & Bros. Co. v. Industrial Commission of Wisconsin, 167 Wis. 612, 167 N. W. 809, 810.

The California statute omits the word "usual" and in the case of Miller & Lux v. Industrial Accident Com. of California, 32 Cal. App. 250, 162 Pac. 651, it was held that employees engaged in construction work upon one of the numerous buildings owned by a corporation for the purpose of housing its employees, and necessary for its business, was engaged in the usual course of master's business and compensation was allowed.

Injury to casual employee engaged to remove equipment from the basement of a building which was being contemplated for use as a hardware business, held sustained in the course of business of employer. Hendrickson v. State Industrial Accident Commission (Cal App.), 8 Pac. (2d) 833.

Casual employee injured while sawing lumber for stand to display goods of employer, engaged in selling meat, vegetables and fruit, held engaged in work for the purpose of employer's trade or business and compensation was allowed. Carlson v. Miller, 118 Conn. 867, 172 Atl. 872.

Removal of lumber accumulated in rear of store was part of process of trade or business of store and a recovery was had. Howard v. Sears, 122 Conn. 185, 188 Atl. 269.

A carpenter injured while engaged in service of corporation engaged in the dairy business, held entitled to compensation for injuries as "employee in service of corporation" employed in usual course of business of employer, or incident thereto, notwithstanding employed man to superintend work, and this employee was employed by the superintendent and worked under his direct supervision. Continental Casualty Co. v. Haynie, 51 Ga. App. 650, 181 S. E. 126.

We fully agree with the previous utterances of this Court in Gulf Refining Co. v. Wilkinson, 94 Fla. 664, 114 So. 503, and Mumby v. Bowden, 25 Fla. 454, 6 So. 453.

The briefs in the case at bar have been well and ably prepared. The record has been carefully considered and we have not been able to find reversible error. The decree appealed from is hereby affirmed.

WHITFIELD and BUFORD, J. J., concur.

BROWN and THOMAS, J. J., dissent.

Chief Justice TERRELL not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.