## MOZINSKI v. ORANGE IMPROVEMENT CO., et al.

Industrial Commission.

January 16, 1956.

J. Russell Hornsby, Orlando, for claimant.

Alton G. Pitts, Maguire, Voorhis & Wells, Orlando, for the employer and insurance carrier.

BY THE COMMISSION.

This cause comes before the full commission upon application of the claimant for review of a deputy's order dated July 22, 1955 rejecting and dismissing the claim, and an order dated August 11, 1955 denying claimant's application to be relieved of paying the cost for the transcript of evidence on the basis of his financial inability.

The claimant received an injury to his right hand while operating a power saw on February 6, 1955. The employer is in the siding and roofing business. It contracts to furnish and install roofing and siding at a fixed price and then enters into agreements with carpenters to apply such siding and roofing at fixed prices

per square. The employer furnishes the material. The deputy found that at the time of his injury the claimant was not an employee of the employer in that he was an independent contractor. The record discloses that claimant and a co-worker reported to the employer for work; that at the employer's office they were issued work cards designating the places to which they were to report for the purpose of applying siding and roofing; that in the event materials were not on hand the employer gave a memorandum to the claimant authorizing the issuance of material to the claimant from their local suppliers. When and if the claimant furnished transportation, he was reimbursed by the employer for use of his truck. He also was paid additional remuneration when he had to load materials, or if carpentry work other than installation of siding and roofing was required. The usual method of paying claimant and his co-worker for their labor in installing roofing and siding was that upon completion of each job they were paid on the basis of the number of "squares" required to complete that job, plus any additional amounts due for truck use, loading, other carpentry work done, or any cleaning up done. In the event claimant or his co-worker needed money before the completion of a job, the employer would advance money to them. On the reverse side of each work card issued to claimant there was printed a certification that "the undersigned is an independent contractor," etc., with a line for the signature of the workman to whom the card was issued. The claimant, however, had no municipal occupational license as a contractor. The record also discloses that three per cent was deducted for workmen's compensation insurance from amounts payable to claimant by the employer for work performed, and that the employer had a placard hanging on the wall in its office stating that employees were covered by workmen's compensation insurance.

The primary issue in this review is whether or not claimant was in fact an independent contractor. As stated in the case of Berrier v. Associated Indemnity Co., Fla. 1939, 196 So. 188, the general test in determining whether an employee is a servant in any particular case is whether he continues throughout his work to be under the direction and control of the master or becomes subject to that of the party to whom he is lent or hired. In Sears Roebuck & Co. v. Pixler, Fla. 1940, 192 So. 617, our Supreme Court held that where the employer agreed to have a plasterer work at night on the premises, paid the costs of materials, retained control of the premises and gave actual instructions to the plasterer, the plasterer was not an independent contractor but an employee under the provisions of the Act.

We are of the opinion that the deputy in the instant case misapplied the law to the facts and misconstrued the legal effect of the facts. In the instant case we find that the claimant was paid by the square for installing siding and roofing, and received extra amounts when he hauled the material, cleaned up at the end of the job, or loaded materials. The claimant also received so much an hour, as a general rule, when doing carpentry work in connection with a job. It is interesting to note in the instant case that the claimant was injured while performing carpentry duties.

The evidence is clear that the claimant was an employee who was paid on a "piece work" basis for his regular work, which method of computing remuneration is common for certain classes of laborers, such as roofers, plasterers, etc. The rule is stated in 58 Am. Jur. 675, section 141, Workmen's Compensation—"It seems to be well settled that a pieceworker is ordinarily to be regarded as an employee rather than as an independent contractor, within the operation of the workmen's compensation acts, although the contrary conclusion has been reached in some cases in view of particular circumstances."

Perhaps the most significant testimony which was neither contradicted nor denied is that of claimant when he stated, viz.— "Q. Now did he have the right to call you off of a job and put you on another job if he wanted to? A. At any time. Q. At any time he wanted to? A. Yes, at any time he desired to take us off a job or discharge us, he had the right to discharge us on any job or take us off of one job and advise us to go on another one, and if he did we went." (T. 7 & 8).

We note in Larson's text on Workmen's Compensation Law, section 44.35, the following rule, viz.—"The power to fire is the power to control. The absolute right to terminate the relationship without liability is not consistent with the concept of independent contract, under which the contractor should have the legal right to complete the project contracted for and to treat any attempt to prevent completion as a breach of contract." Larson further quotes from Industrial Commission v. Meddock (Ariz. 1947), 180 P. 2d 580—"We cannot conceive of an independent contractor subject to being summarily, or within a period of twenty-four hours, dismissed without liability as the contract states, and yet not be under the order and control of another party . . . To a poor man needing work, the power to dismiss immediately is equivalent to the power to control."

Rule 8 (c) of the commission's rules of procedure in workmen's compensation cases sets forth the conditions under which an ap-

plicant for review may be relieved of paying the cost for the preparation of the transcript of evidence on the basis of his financial inability to bear the cost thereof. Claimant testified that he has been unemployed since his injury, has a wife and child to support, has exhausted his savings, is behind on his rent, owes a balance of $284.03 on money borrowed from a loan company on security of his household furniture and 1952 pickup truck, and is not in a position to pay $125 for the transcript. This testimony is uncontradicted. Because claimant appeared healthy at the insolvency hearing, owns household goods and furnishings and a truck, and had "made no serious effort to ascertain whether he could refinance said loan and secure additional finances with which to pay the costs of transcript," the deputy denied his petition to be relieved of paying said cost. On the uncontradicted testimony presented before him, the deputy erred in finding that the claimant had failed to establish his financial inability to bear the cost of the transcript, and his denial of claimant's petition in this respect must be reversed.

It appearing that the deputy commissioner has misconstrued and misapplied the law to the facts, his orders of July 22, 1955 and August 11, 1955 are reversed, and this cause is remanded for his further consideration in the light of the views expressed herein, with express authority to conduct further hearings if in his discretion that is necessary.

JAMES CAMERON, Commissioner (dissenting).

I am compelled to disagree with my colleagues in their reversal of the deputy commissioner in the instant cause. The deputy has made a finding of *fact* to the effect that the claimant in this cause is an independent contractor. In 27 Am. Jur. 485, section 5, under title "Independent Contractors," it is stated—*"Although it is apparent, from an examination of cases involving the independent contractor relationship, that there is no absolute rule for determining whether one is an independent contractor or an employee, and that each case must be determined on its own facts,* nevertheless, there are many well-recognized and fairly typical indicia of the status of an independent contractor, even though the presence of one or more of such indicia in a case is not necessarily conclusive . . ." (Emphasis supplied.)

Our Supreme Court in Magarian v. Southern Fruit Distributors, et al., Fla. 1941, 1 So. 2d 858, quoted the above with approval and added—"It appears generally conceded that no hard and fast rule may be stated to control the determination of the question

as to whether one occupies the status of an employee or that of an independent contractor *and that each case must stand on its own facts* and, therefore, no useful purpose may be served by citing particular cases involving different factual conditions." (Emphasis supplied.)

In my dissenting opinion in the claim of Baker v. Nordin, claim # U-21146, heard this same date before the full commission, I pointed out that it is the deputy commissioner's prerogative and province to weigh and assess the probative value of the evidence he hears and to accordingly make appropriate findings of fact. The commission's sole function as the reviewing authority is to ascertain if competent substantial evidence is present to support those findings of fact, and whether the law has been properly applied thereto. As is stated in 27 Am. Jur. 485, supra, "each case must be determined on its own facts." This being true, the commission should determine and confine its examination of the record to whether or not there is adequate evidence to support the findings of fact made in the instant cause.

Legal writers have listed many factors which tend to show an "independent contractor relationship" under the law. In this case the deputy has made findings of fact more compatible with an "independent contractor relationship" than with an "employee relationship." The deputy found in part—"It is further found that claimant worked most of the time with J. W. Edwards, as a team. There was no set time to go to work nor to quit at the end of the day. Both men also worked for other contractors. They were paid by the company whenever the job was completed. The owner of the building had to sign a completion slip indicating the job was done satisfactorily before claimant and Edwards were paid. Both claimant and Edwards drew advances from time to time on their work. Claimant had to furnish his own transportation, ladders, cutters, and carpenter tools. Proceeds of the checks were divided between claimant and Edwards on the basis of how much work each performed on the particular job. The company had nothing to do with such a division of the money. No social security or withholding taxes were deducted by the company . . ."

My examination of the record discloses there is competent substantial evidence to support the findings of fact, which accord with logic and reason, and that the deputy's order accords with the essential requirements of the law within the meaning of U. S. Casualty Co. v. Maryland Casualty Co., Fla. 1951, 55 So. 2d 741. Accordingly, for the reasons recited herein, the order should be affirmed.